**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Catlin Specialty Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:12-cv-2785-PMD |
| | ) | |
| v. | ) | |
| | ) | |
| Scott McPherson, Larry Paragano, | ) | **ORDER** |
| and Mary Paragano, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon Plaintiff Catlin Specialty Insurance Company's ("Catlin") motion for summary judgment ("Motion") against Defendants Larry Paragano and Mary Paragano (collectively, "the Paraganos"). For the reasons set forth below, the Court grants Catlin's Motion.

**BACKGROUND**

This case arises out of a claim by defendant Scott McPherson ("McPherson") for defense and indemnity from Catlin under a commercial general liability insurance policy issued by Catlin to Prestige Metal Roofs, LLC ("Prestige"), a company owned by McPherson. In the underlying litigation, the Paraganos allege that McPherson, while working on behalf of his former company, S&T Roofing, inadequately or defectively constructed the roof to the house located at 3759 Saint Ellen's Drive, Mount Pleasant, South Carolina, 29466 ("the house"), which was later purchased by the Paraganos from the former owners, Paul and Beth Bird. Paul Bird served as the general contractor for the construction of the house. In 2006, he hired S&T Roofing as a subcontractor to install a 26-gauge Galvalume roofing system on the house. Bird communicated with

McPherson as the representative of S&T Roofing during the discussions to hire S&T Roofing to install the roofing system on the house. On August 8, 2006, Bird and McPherson signed a proposal and contract for the roofing work. The Birds paid S&T Roofing a total of $14,250.00 for the roofing construction work performed on the house. On November 30, 2006, following the completion of the construction, the Town of Mount Pleasant issued a Certificate of Occupancy to the Birds as owners of the house. In April 2009, the Birds sold the house to the Paraganos. Upon taking possession of the property, the Paraganos purportedly discovered the existence of certain roofing defects.

On June 21, 2012, the Paraganos filed a lawsuit against McPherson and others in the Court of Common Pleas in Charleston, South Carolina ("underlying litigation"). In the underlying litigation, the Paraganos allege multiple claims against McPherson and his former business, S&T Roofing, including negligence and defective construction, and they seek damages to cover the costs to correct the construction defects and to remedy resulting damage.

On January 3, 2008, Catlin issued a commercial general liability insurance policy, policy number 3200200423, to Prestige, a roofing contracting company owned and operated by McPherson and his wife, Tammy McPherson. The original policy issued by Catlin designated only Prestige as the named insured. This policy was renewed on January 3, 2009, as policy number 3200200676, and the declarations page designates both "Prestige Metal Roofs LLC" and "Scott and Tammy McPherson" as named insureds. Catlin issued an endorsement that deletes Scott and Tammy McPherson as named insureds, effective January 3, 2009. McPherson's prior company, S&T Roofing, is not listed on the declarations page of the Catlin policy as a named insured. At the time the Catlin policy was issued, S&T Roofing was a dissolved South Carolina corporation.

McPherson notified Catlin of the underlying litigation, which Catlin agreed to defend under a full reservation of rights.  On September 25, 2012, Catlin brought this declaratory judgment action seeking a ruling from this Court that, based on the allegations in the complaint in the underlying litigation, the insurance policy issued by Catlin to Prestige does not require Catlin to defend or indemnify McPherson for the claim alleged by the Paraganos in the underlying litigation because he does not qualify as an insured under the terms of the Catlin policy and the circumstances at issue.  On December 11, 2012, the Clerk of Court entered a default against McPherson pursuant to Federal Rule of Civil Procedure 55(a) for failure to answer.  Catlin now moves for summary judgment against the Paraganos.  The Paraganos filed their response on July 1, 2013, and Catlin filed a reply on July 8, 2013.  The Motion is ripe for judgment.

## **JURISDICTION**

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.  Catlin is a corporation organized under the laws of Delaware, with its principal place of business located in Atlanta, Georgia.  McPherson and the Paraganos are all residents and citizens of South Carolina.  Thus, this Court has diversity jurisdiction over this case.

A federal court's power to issue a declaratory judgment emanates from 28 U.S.C. § 2201, which provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

3

## STANDARD OF REVIEW

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## ANALYSIS

### I.    General Principles of South Carolina Contract Law

Because this action falls under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, the Court looks to the law of South Carolina to determine the standards by which to evaluate the contract. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348

(S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. Nat'l Fid. Life Ins. Co.*, 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

## II.    Catlin's Duties Under the Policy

Under South Carolina law, "an insurer's duty to defend is based on the allegations of the underlying complaint" and the terms of the policy. *B.L.G. Enters.*, 514 S.E.2d at 330. In the underlying litigation, the Paraganos allege that McPherson and S&T Roofing negligently and defectively constructed the roof of the house. McPherson now seeks liability coverage for these

claims under the commercial general liability policy issued by Catlin to his business, Prestige. Coverage is available only if McPherson is an insured under the Catlin policy.

To determine whether or not there is coverage for McPherson, the Court must evaluate the insuring provisions of the policy. The Insuring Agreement provides that Catlin "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. [Catlin] will have the right and duty to defend the insured against any 'suit' seeking those damages." Catlin Policy at 31, dkt. 1-1. Under the Policy, the "insured" is any person or organization designated in the Declarations page and further defined under "Section II—Who Is An Insured." *Id.* at 31, 38.

On the Declarations page of the renewal policy, both "Prestige Metal Roofs LLC" and "Scott and Tammy McPherson" are named as insureds. Catlin Policy at 2. However, attached to the renewal policy is an endorsement entitled Policy Change No. 1, which amends the policy to delete the McPhersons as named insureds. "When construing an insurance policy containing an endorsement, the policy and the endorsement are to be read together," but if "a provision of the policy conflicts with a provision of the endorsement, the latter controls." *B.L.G. Enters.*, 514 S.E.2d at 331; *see McIntosh v. Whieldon*, 30 S.E.2d 851, 854 (S.C. 1944) (explaining that "under well-established principles [the endorsement] supersedes any inconsistent provision contained in the general terms of the policy and in case of conflict, the endorsement controls"). Thus, to the extent that the declarations page is inconsistent with the endorsement, the endorsement controls.

Policy Change No. 1, which is attached to the renewal policy, states in bold letters at the top of the form: "**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**" Catlin Policy at 47. The document then states that the named insured for policy number 3200200676 is "PRESTIGE METAL ROOFS LLC, 100 SHIRLEY LANE,

6

LADSON, SC 29456." *Id.* The document further explains that "IN CONSIDERATION OF NO CHANGE IN PREMIUM, THE INSURED'S NAME IS AMENDED TO READ: PRESTIGE METAL ROOFS LLC" and that this change affects the commercial general liability coverage. *Id.* The form further provides: "All other terms, conditions and exclusions remain unchanged[.] This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated." *Id.* The policy change is effective as of "01/03/2009," the same date the policy renewal was issued. *Id.*

Catlin maintains that Policy Change No. 1 is an endorsement that unambiguously amends the Declarations page by deleting Scott and Tammy McPherson as named insureds. The Court agrees and notes that the McPhersons do not dispute this argument, nor do they contend that there are any ambiguities in the policy. Because the endorsement is inconsistent with the Declarations page, Policy Change No. 1 controls. Accordingly, under the plain terms of the policy, the only named insured is Prestige Metal Roofs LLC.

Although the McPhersons do not argue that Scott McPherson is a named insured under the policy, they maintain that the Catlin policy provides coverage for the work he performed on the house in 2006. Section II of the Catlin Policy further defines who is an insured and provides, in pertinent part:

> 1. If you are designated in the Declarations as:
>     a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>                    *       *       *
>     c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>                    *       *       *
> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

7

Catlin Policy at 38-39.  Because McPherson is not designated in the Declarations, as modified by the endorsement, as a named individual insured, Section II.1.a does not apply.  Instead, Section II.1.c is the only definition that applies in this case because the only named insured is Prestige Metal Roofs LLC, a limited liability company.  Accordingly, Prestige is an insured.  Assuming McPherson is a member of Prestige, he qualifies as an insured "only with respect to the conduct of [Prestige's] business."  To the extent that McPherson is a manager of Prestige, he qualifies as an insured "only with respect to [his] duties as [Prestige's] manager[]."  Thus, in order for McPherson to be a covered insured under the Catlin policy, he must have been conducting Prestige's business or carrying out his duties as Prestige's manager at the time of the alleged negligence or deficient construction.

There are no allegations in the underlying litigation, and the Paraganos do not now assert, that McPherson was acting on behalf of Prestige during the construction of the house.  Instead, in the underlying complaint the Paraganos allege that McPherson was acting on behalf of his former company, S&T Roofing.  In their response memorandum to the instant Motion, the Paraganos now argue that S&T Roofing was no longer in existence in 2006 and thus McPherson was acting in his individual capacity when he constructed the roof in 2006.  However, it is undisputed that McPherson was not acting on behalf of Prestige during the 2006 construction of the roof.  Accordingly, no matter if McPherson were acting on behalf of S&T Roofing or in his individual capacity, he is not an "insured" under the Catlin policy.  Thus, as a matter of law, the policy does not provide liability insurance coverage to McPherson for the claims alleged in the underlying litigation.  The Court therefore concludes that, as a matter of law, Catlin has no duty to defend or indemnify McPherson in the underlying litigation.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Catlin's Motion for Summary Judgment is

**GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

July 31, 2013
Charleston, SC